IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS CORTEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GLOBAL GROUND SUPPORT, LLC; AIR T, ) <br> INC.; DOES 1-10, ) <br> ) <br> Defendants. ) <br> ) | Case No. 09-4138 SC <br><br> ORDER DENYING DEFENDANTS' <br> <u>MOTION TO DISMISS</u> |

## I. INTRODUCTION

Plaintiff Jesus Cortez ("Cortez") filed this suit after his injury involving a scissor lift that was manufactured and distributed by Defendants Global Ground Support, LLC, and Air T, Inc. (collectively, "Global"). <u>See</u> Notice of Removal, Docket No. 1, Ex. A ("Compl."). Global has filed a Motion to Dismiss Plaintiff's third cause of action, which alleges that Global has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 <u>et</u> <u>seq</u>. Docket No. 10 ("MTD"). Cortez has filed an Opposition, Docket No. 13, and Global filed a Reply, Docket No. 14.

Having considered the documents submitted by both parties, the Court concludes that it would be inappropriate to dismiss Cortez's third cause of action at this stage of the litigation. Global's Motion to Dismiss is therefore DENIED.

**II.   BACKGROUND**

Global manufactures and sells aircraft ground support trucks and industrial specialty equipment. Compl. ¶ 10. One product designed and sold by Global is the CB 18-228, which is a scissor lift that allows its users to stand upon a platform that can be elevated approximately 90 to 228 feet above the ground, for the purpose of loading personnel, equipment and supplies into aircraft. Id. ¶ 11.

On June 13, 2008, Cortez claims that he was operating a CB 18-228 (the "lift"), when it malfunctioned and dropped, crushing his foot and lower leg. Id. ¶ 13. Cortez alleges that his injury was the direct result of several design defects of the lift. Id. ¶ 14. In particular, he claims that the lift's "operating control panel is positioned directly above the front loading door, where the Lift's moving parts and dangerous pinch points are located." Id. This design required Cortez to "stand with his arms stretched high above his head to reach the controls and treacherously close to the moving parts and pinch points . . . ." Id. According to Cortez, the risks inherent in this design could have been avoided by "simply placing the controls at a readily accessible height on the inside wall of the CB 18-228 truck cabin . . . ." Id. ¶ 15. To support his assertion that Global was negligent in designing the lift, he claims that a set of voluntary industry standards, set by the American National Standards Institute ("ANSI"), recommends that controls be placed at a readily accessible height on the inside wall of the truck cabin, and away from dangerous moving parts. Id. Cortez also faults Global for not placing an effective safety guard on the lift, and for not including adequate safety and maintenance

2

instructions. Id. ¶¶ 16-17.

Cortez's Complaint includes three claims against Global. First, he alleges that Global was negligent in designing the lift. Id. ¶¶ 25-35. Second, he claims that Global is liable under the doctrine of strict liability, based on alleged design defects and warning defects. Id. ¶¶ 36-55. His third claim is based upon the UCL. Id. ¶¶ 56-65. Plaintiff seeks injunctive relief under the UCL, "including but not limited to an order requiring Defendants to correct the defects alleged herein and stop selling and distributing the defective Lifts." Id. at 13. Global has moved to dismiss Cortez's UCL claim, and has not by its motion sought to disturb his negligence and strict liability claims. See MTD at 1.

**III. LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based upon the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Although well-pleaded factual allegations are taken as true, a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). The court need not accept as true legal conclusions

3

couched as factual allegations. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.

## IV.  DISCUSSION

The UCL allows "any court of competent jurisdiction" to enjoin any person who engages in "unfair competition," which "include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code §§ 17200, 17203. "The tort encompasses practices which offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001) (citing Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632 (Ct. App. 1996)). For his claim to survive this Motion to Dismiss, Cortez must allege that Global has violated "any or all of the three prongs of the UCL -- unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Ct. App. 2007); State Farm Fire & Casualty Co. v. Superior Court, 45 Cal. App. 4th 1093, 1102 (Ct. App. 1996) ("Because section 17200's definition is disjunctive, a 'business act or practice' is prohibited if it is 'unfair' or 'unlawful' or 'fraudulent.'").

The Court's analysis begins and ends with the first prong of the UCL, and the question of whether Cortez has alleged that Global has engaged in a business practice that is "unlawful," as construed by the UCL. Cortez has not alleged that Global has violated any statute or regulation. Nor can Cortez argue that Global has

4

1  committed an "unlawful" act solely by violating the voluntary
2  standards of ANSI, as Cortez does not claim that these carry the
3  force of law.  Instead, Cortez cites various decisions in which
4  courts have held that a breach of the UCL can be predicated upon
5  the commission of a common law tort.  Opp'n at 6-8.
6      California Courts have held that "[t]he 'unlawful practices
7  prohibited by section 17200 are any practices forbidden by law, be
8  it civil or criminal, federal, state or municipal, statutory,
9  regulatory, or court-made." Saunders v. Superior Court, 27 Cal.
10 App. 4th 832, 838-39 (Ct. App. 1994).  "[A]n 'unlawful' business
11 practice actionable under the UCL is one that violates an existing
12 law, including case law . . . ." Cmty Assisting Recovery, Inc. v.
13 Aegis Sec. Ins. Co., 92 Cal. App. 4th 886, 891 (Ct. App. 2001).  In
14 CRST Van Expedited, Inc. v. Werner Enters., the Ninth Circuit
15 permitted a plaintiff to bring a UCL claim that was premised upon a
16 civil tort.  479 F.3d 1099, 1107 (9th Cir. 2007).  It held that the
17 plaintiff had "adequately alleged that [the defendant] violated the
18 UCL because [the plaintiff] adequately alleged that [the defendant]
19 engaged in an 'unlawful' business act or practice, . . . namely,
20 intentional interference with [the plaintiff's] employment
21 contracts."  Similarly, in Gabana Gulf Distrib., Ltd. v. Gap Int'l
22 Sales, Inc., the district court found that the plaintiff "may use
23 the [common law breach of covenant of good faith and fair dealing]
24 claim as a predicate for § 17200 liability."  No. 06-2584, 2008
25 U.S. Dist. LEXIS 1658, *28 (N.D. Cal. Jan. 9, 2008).  It added
26 that, "[a]lthough the state of § 17200 jurisprudence is in rapid
27 flux, California courts have not yet foreclosed common law theories
28 -- such as a breach of the covenant of good faith -- as a basis for

5

actions pursuant to § 17200." Id.

The case law persuades this Court that common law torts can generally be used as a predicate for a claim under the UCL. However, Global responds by pointing out that none of these cases that Plaintiff cites actually permit a plaintiff to maintain a UCL claim that is premised based solely on theories of product liability. Global's position is bolstered by a single decision, Klein v. Earth Elements, Inc., in which a California Court of Appeal ruled that the defendant pet food manufacturer did not commit an "unlawful" act by selling contaminated pet food. 59 Cal. App. 4th 965, 969 (Ct. App. 1997). Even though the plaintiff claimed that the defendant may be liable under the doctrine of strict product liability and an implied warranty of fitness, the court affirmed a grant of summary judgment against the plaintiff's UCL claim.[1] Id. The court dismissed the connection between the doctrine of strict product liability in the UCL in one paragraph:

> While these doctrines do provide for civil liability upon proof of their elements they do not, by themselves, describe acts or practices that are illegal or otherwise forbidden by law. And Klein has not presented any argument or evidence to back up his claim that Earth Elements broke any law by unwittingly distributing contaminated pet food. In our view the unintentional distribution of a defective product is beyond the scope and policy of the "unlawful" prong of section 17200.

Id.

Klein therefore appears to present a break from the more common practice of allowing plaintiffs to predicate UCL claims upon the commission of common law torts. However, the Klein decision

---

[1] The decision does not indicate whether the plaintiff in Klein brought a separate claim for strict liability, or negligent design, in addition to his UCL Claim. See 59 Cal. App. 4th at 968.

6

was issued in the context of a motion for summary judgment, which means that the defendant had the opportunity to present evidence regarding the nature of its conduct and the reasonability of its actions.[2]  See id. at 967.  The court in Klein couched its decision in language that repeatedly referred to the "unintentional" and "unwitting" nature of the defendant's conduct, and referred throughout the opinion to the defendant's fast response to the discovery of the defect as well as its efforts to warn and protect the public.  Id. at 967-70.

Pursuant to CRST Van Expedited, the commission of a tort may be "unlawful" under the UCL.  479 F.3d at 1107.  Given the exceptional breadth of the UCL, which is designed to encompass all activities that are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," Glenn K. Jackson Inc., 273 F.3d at 1203, the Court sees no basis for holding that claims based on negligent design should be categorically excluded from the remedies offered by the UCL.  The exception set out by Klein must therefore be read narrowly, and the Court declines to extend the ruling in Klein to hold that, as a matter of law, a plaintiff can never support a UCL claim based on the manufacture and sale of negligently designed products.

Cortez's Complaint alleges that Global "knew or should have known" that its design of the lift was defective, especially in

---

[2] In Klein, the defendant's products were beset by a naturally occurring, difficult-to-detect, mold that thrived because "proper moisture and heat conditions [were] present simultaneously . . . ." 59 Cal. App. 4th at 967-68.  In contrast, Cortez claims that Global "knew or should have known"  that its design of the lift was defective, particularly in light of the standards set by ANSI.  Compl. ¶ 28.  When construed in a light most favorable to Cortez, these allegations present a far stronger case for negligent or wrongful conduct than the facts in Klein.

light of the standards set by ANSI. Compl. ¶ 28-30. He claims that Global's failure to include safety guards and usage instructions was negligent. Id. He has alleged facts that sufficiently state a factual basis for a negligence claim. This case is still in its initial stages, and the parties have not begun discovery. The Court therefore finds that Cortez, when afforded the deference that he is due at the dismissal stage, may still be able to support his UCL claim by succeeding on his independent claim that the lift was negligently designed. For this reason, the Court need not reach the question of whether Cortez has stated a claim under the other prongs of the UCL, i.e., whether the manufacture and sale of the lift was unfair or fraudulent.

Global makes a series of arguments that deserve additional comment. Global describes several policy-related concerns that could arise if courts use the UCL to issue injunctions in product liability cases. Reply at 4-5. Global warns that if courts engage in the practice of issuing injunctions against manufacturers with respect to the safety specifications of their products, then they "would become a de facto regulatory body," would usurp the role of the Consumer Products Safety Commission, and would find themselves dictating the design of every product in every product liability action brought before them. Id. Global's warnings are well taken; they simply do not speak to the question of whether a negligent design claim can support a UCL claim vis-à-vis the UCL's "unlawful" prong. The Court's present ruling on this matter is limited; by declining to dismiss Cortez's UCL claim in the initial stages of this suit, it by no means commits itself to issuing an injunction under the UCL, even if Cortez should succeed in all other respects.

8

The remedies that the UCL authorizes are explicitly permissive. See Cal. Bus. & Prof. Code § 17203 (stating that those who violate the UCL "may be enjoined" by courts). As California courts have repeatedly held:

> [B]ecause the remedies available under the UCL, namely injunctions and restitution, are equitable in nature, courts have the discretion to abstain from employing them. Where a UCL action would drag a court of equity into an area of complex economic policy, equitable abstention is appropriate. In such cases, it is primarily a legislative and not a judicial function to determine the best economic policy.

Desert Healthcare Dist. v. Pacificare Fhp, 94 Cal. App. 4th 781, 795 (Ct. App. 2001).

Should Cortez prevail in his other claims, he will still need to establish that this Court's equitable interference in Global's design process is both prudent and equitable before this Court will issue an injunction. Although it is likely that a plaintiff would only be able to make such a showing in unique circumstances, it is far too early in this suit to require Cortez to make this showing.

## V.  CONCLUSION

Defendant Global's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: November 25, 2009

_____
UNITED STATES DISTRICT JUDGE