Jennie Lee Anderson (SBN 203586)
Lori E. Anderson (SBN 205816)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JESUS CORTEZ,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL GROUND SUPPORT, LLC; AIR T, INC., DOES 1-10,<br><br>Defendants. | Civil Case No.: C09-04138 SC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE LIABILITY AND DAMAGE PORTIONS OF TRIAL**<br><br>Hearing Date: November 19, 2010<br>Hearing Time: 10:00 a.m.<br>Judge: Hon. Samuel Conti<br>Courtroom: 1 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendants Global Ground Support, LLC and Air T, Inc. (ñDefendantsò) have filed a Motion to Bifurcate Liability and Damage Portions of Trial (ñMotionò). Neither the Federal Rules of Civil Procedure nor practical considerations support this motion.

Defendants have the burden on this motion to bifurcate. Rather than arguing the ultimate merits of the case, in order to prevail Defendants must demonstrate how bifurcation is supported by convenience, judicial economy and avoidance of prejudice. Here, Defendantsô Motion consists almost solely of argument relating to the ultimate merits of Plaintiff Cortezôs claims ð likely because the inconvenience, waste of judicial resources, and potential for severe prejudice from bifurcation are so clear.

Should the trial be bifurcated, delays and other prejudice to the Plaintiff are certain to occur. Thus, this Motion should be denied.

## II. FACTUAL BACKGROUND

On June 13, 2008, at approximately 10:30 p.m., the Plaintiff, Mr. Cortez, a 37-year-old driver for Flying Food Group (ñFFGò), was seriously injured while operating a CB 18-228 scissor lift vehicle (ñCB 18-228ò or the ñLiftò) manufactured and designed by Defendant Global Ground Support, LLC (ñGGSò) and Air T, Inc. Mr. Cortez and his work partner had just returned to the FFG facility from San Francisco International Airport and were preparing to unload empty catering carts from the truck onto the upper level loading dock of the facility.

The Lift is supposed to operate such that, as the van body rises from its resting position, the van body floor meets the forward platform, which is positioned immediately above the truck cab and stationary cab guard. At that time, the forward platform is supposed to rise together, and level with, the van body floor.

Unfortunately, the CB 18-228 is defectively designed such that the operator controls to lift the van body for loading and unloading are positioned ***outside and above*** the front rolling door, approximately six-and-a-half feet above the van floor, thereby ***requiring*** the operator to stand directly next to the moving parts and pinch points while reaching high overhead as the truck rises.

The design is unreasonably dangerous, and a safer, alternate design is readily available. Indeed, the recommended industry standard is to place the user control panel on the ***inside wall*** of the cabin, thus allowing the operator to stand out of harmôs way and clear of the moving parts and pinch points in the event of a malfunction.

The facts demonstrate that Mr. Cortez was operating the Lift in accordance with its foreseeable and intended use when the forward platform became stuck, rising prematurely and resulting in an unshielded gap below the forward platform, as the cabin continued to rise. Because the Lift also lacked appropriate safety guards, the malfunction created an unshielded and extremely dangerous gap directly adjacent to where the defective design required Mr. Cortez to stand to operate controls. When the pressure increased to a certain level, the Liftôs forward platform crashed down, crushing Mr. Cortezôs foot and breaking his leg.

Because Defendantsô design also lacked any way to free Mr. Cortez from the clutches of the heavy steel platform (other manufacturers use a lighter weight metal, such as aluminum), the platform could not be lifted by the other employees who rushed to Mr. Cortezôs assistance. As Mr. Cortez cried out in excruciating pain, his leg crushed under an estimated 4,000 pounds of steel for a period of 20-30 minutes, coworkers scrambled to locate a bar with which to pry the platform up to free Mr. Cortezôs leg. One witness standing outside the van testified that he saw Mr. Cortezôs crushed foot sticking out from beneath the steel platform sits and that he had to look away because the site was too gruesome to watch.

Mr. Cortez was rushed to the hospital, where he remained for several weeks, during which time Mr. Cortez endured multiple painful procedures and was in constant fear of losing his leg. Mr. Cortez has undergone at least ***seven*** surgeries and additional surgery is needed, as his foot is still seriously disfigured. To this day, he walks with a limp, cannot comfortably wear most shoes and suffers regular pain from his disfigured leg and foot.

Prior to his injury, Mr. Cortez was a healthy, hard-working young man supporting his wife and six children. Now, he is permanently disabled and will never be able to return to his job as a driver. Mr. Cortezôs career and earning capacity have been cut short by 28 years or more due to Defendantsô failure to take the most basic and accessible steps to design a product that is safe.

It is beyond dispute that had the Lift been free of defects and designed in accordance with industry safety standards, Mr. Cortez would not have been injured at all. Defendants squandered multiple opportunities to design a safer Lift to Mr. Cortezó s extreme detriment. Indeed, Defendants unreasonably placed the controls in the most inaccessible and dangerous location possible, failed to provide effective safety guards, and failed to provide placards or other warnings.

## III. PROCEDURAL HISTORY

On August 4, 2009, Plaintiff filed his Complaint against Defendants alleging three causes of action: strict liability (based on design defect and failure to warn), negligent design, and violations of Californiaó s Unfair Competition Law (ñUCLò), Bus. & Prof. Code §§ 17200, *et seq.* Defendants removed the action to the United States District Court for the Northern District of California. On September 11, 2009, Defendants filed a Motion to Dismiss Plaintiffó s Claim For Injunctive Relief. On November 25, 2009, the Court entered an order denying Defendantsô Motion to Dismiss.

On September 20, 2010, Defendants sought a trial continuance that the Court summarily denied. On September 30, 2010, Defendants filed this Motion to Bifurcate. The trial in this matter is set for January 20, 2011.

## IV. LEGAL STANDARD ON A MOTION TO BIFURCATE

Rule 42(b)(1) provides that the Court may bifurcate a trial ñ[f]or convenience, to avoid prejudice, or to expedite and economize . . .ò Fed. R. Civ. P. 42(b). A motion to bifurcate should be denied where doing so ñwould only complicate the instant proceedings and cause needless delay.ò *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 866 (C.D. Cal. 1994).

On a motion to bifurcate, ***the movant has the burden***. *See Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992). Further, ***a decision on bifurcation should not embrace the merits of a case***. The Ninth Circuit has stated that ñ[w]hether there should be severance and separate trial of an issue is primarily a question concerning the courtó s trial procedure and convenience, not a question concerning the merits of the case.ò *Richmond v. Weiner*, 353 F.2d 41, 44 (9th Cir. 1965).

In addition to Rule 42(b)ôs requirement that the Court consider the potential for convenience, prejudice, and judicial economy, courts have also held that on a motion for bifurcation, courts should consider the separability of issues. *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961).

Applying these standards here, Defendantsô Motion should be denied.

## V. ARGUMENT

### A. Bifurcation Is Inappropriate.

Defendants have not shown bifurcation is warranted under Rule 42(b). First, Defendantsô Motion is chiefly concerned with the puzzling contention that they are likely to prevail on the issue of liability. Defendantsô argument is essentially that, since Defendants believe that they will prevail, the Court should preemptively curtail Mr. Cortezôs ability to present his case. That is simply not the law. As noted above, ***a decision on bifurcation should not embrace the merits of a case***. *Richmond*, 353 F.2d at 44. Thus, Defendantsô argumentation on the meritsð which makes up the bulk of their Motionð is irrelevant.[1]

More important than the irrelevance of Defendantsô arguments on the merits, however, is the fact the Defendants have offered virtually no substantive arguments on the issues that would be properly before the Court on a motion to bifurcateð namely, convenience, prejudice, and judicial economy. Bifurcation is a drastic departure from standard procedure, reserved for when it is truly necessary. The Federal Rule speaks of convenience and prejudice, but Defendantsô Motion makes no mention whatsoever of inconvenience or prejudice to them in following standard trial procedure, because none exists. In resting their argument on irrelevant information, they have in no way met their legal burden on this ill-advised Motion to Bifurcate. In fact,

---

[1] In any event, liability in this matter is simple and readily established by the evidence, as a manufacturer is strictly liable for injuries to persons caused by its defective products, and a product suffers from a design defect whenever the risk of the danger inherent in the challenged design outweighs the benefit of the design. *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 432 (1978); *Soule v. Gen. Motors Corp*. 8 Cal. 4th 548, 562 (1994); *Pike v. Frank G. Hough Co*., 2 Cal. 3d 465, 475 (1970) (a product is defective and dangerous if a flaw in its design subjects users to unreasonable risk). Here, Defendants admit that they designed the Lift with operator controls located above and outside the front door, requiring the operator to stand next to the dangerous pinch points, when a readily available, indeed, recommended, alternate design would have cost them nothing and kept Plaintiff out of harmôs way altogether.

Plaintiff will demonstrate herein how each factor strongly counsels ***against*** bifurcation.

**B. <u>Defendants Have Not Met Their Burden.</u>**

Applying the standard enunciated in *Spectra-Physics* to the present case, Defendants have not met their burden. In *Spectra-Physics*, the district court denied bifurcation, distinguishing the facts in that case from those in a complex case (one proper for bifurcation), where ñmillionsò of documents would have to be reviewed and where, unlike in *Spectra-Physics*, issues of liability and damages did not overlap. *See* 144 F.R.D. at 101. Further, *Spectra-Physics* noted that undue delay can constitute ñprejudiceò under Rule 42(b)(1), and that ñlogic dictates that holding two trials, as opposed to one, will inevitably cause delay in resolution. . .ò *Id.*

California district courts have continued to cite *Spectra-Physics* in denying requests for bifurcation. *See*, *e.g.*, *GEM Acquisitionco, LLC v. Sorenson Group Holdings, LLC*, 2010 WL 1729400, *2 (N.D. Cal. 2010); *McDermott v. Potter*, 2010 WL 956808, *1 (N.D. Cal. 2010); *Boston Scientific Corp. v. Johnson & Johnson*, Case No. C 02-00790 SI, 2006 WL 3455009, *3 (N.D. Cal. Nov. 29, 2006); *White v. E-Loan, Inc.*, Case No. C 05-02080 SI, 2006 WL 2850041, *1 (N.D. Cal. Oct. 5, 2006); *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd.*, Case Nos. C 04-2000 CW, C 06-2929 CW, 2006 WL 2846436, *4 (N.D. Cal. Oct. 3, 2006); *Netflix, Inc. v. Blockbuster, Inc.*, Case No. C 06-02361 WHA, 2006 WL 2458717, *9 (N.D. Cal. Aug. 22, 2006); *Robotic Visions Systems, Inc. v. View Engineering, Inc.*, Case No. CV 96-2288 LGB(AJWX), 1997 WL 809679, *3 (C.D. Cal. Nov. 6, 1997).

In concluding bifurcation was not warranted, one District Court stated:

> . . . [t]his Court begins its analysis with the Advisory Committeeôs admonition that ñseparation of issues for trial is not to be routinely ordered.ò Ordinarily, a jury is entitled to hear all of the evidence and deliberate over all of the issues in the case at one time. ***Bifurcation is thus the exception, not the rule, and the movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce.***

*Svege v. Mercedes-Benz Credit Corporation*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004) (internal citations omitted) (emphasis added). *See also Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000); *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 2 (D.P.R. 1997).

Thus, a partyôs motion for bifurcation does not obligate the Court to bifurcate. To the

contrary, the Ninth Circuit upheld the Northern Districtôs refusal to bifurcate a case in *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). In *Hangarter*, the district court tried the issues of liability for contract damages and liability for punitive damages for tortious breach of contract together before the same jury. *Id.* But the Ninth Circuit held that there had been no abuse of discretion in refusing to bifurcateð even though the two claims had different burdens of proof. *Id.*

The Defendants in this case have not shown that bifurcation is warranted apart from a general argument that since they believe they will prevail, Mr. Cortez should be prevented from making his case to a jury. This assertion neither addresses the requirements of Rule 42(b) nor meets the Defendantsô burden on this Motion. Nor does it explain why an extraordinary procedure should be applied in a straightforward product liability case such as this one. Many district courts have rejected bifurcation in straightforward tort cases. *See, e.g., Ake v. General Motors Corp.*, 942 F. Supp. 869, 877 (W.D.N.Y. 1996) (bifurcation not warranted because of liability/damages evidence overlap in products liability action against manufacturer of truck based on alleged defect in fuel system); *Monaghan v. SZS 33 Associates, L.P.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993) (premises liability suit after plaintiff was shot at a rail station); *Union Fire Ins. Co. v. Dowd & Dowd, P.C.*, 191 F.R.D. 566, 568 (N.D. Ill. 1999) (malpractice suit over mishandling of a personal injury trial).

Here, Defendants have offered no reason for departing from standard procedure.

**C. <u>The Three Cases Cited By Defendants Are Inapposite And, If Anything, Support Denying Bifurcation Here.</u>**

Of the three cases cited by Defendants in their Motion, one actually counsels ***against*** bifurcation, and the other two are readily distinguishable, as they involve bifurcation in the context of complex class actions, where bifurcation is sometimes called for. *See, e.g., Siddiqi v. Regents of University of California*, Case No. C 99-0790 SI, 2000 WL 33190435, *4 (N.D. Cal. Sep. 6, 2000).

In *Calmar*, 850 F. Supp. at 866, cited by Defendants for the proposition that bifurcation decisions are given ñbroad discretionò (see Defendantsô Motion, 5:14-17), the court perceived

that bifurcation would not ñprovide the most efficient method of handling the instant action.ò *Id.* at 866. As a result, the court ***denied*** the defendantsô motion to bifurcate and to stay certain discovery, concluding that the sought order ñwould only complicate the instant proceedings and cause needless delay.ò *Id.*

In *Slaven v. BP America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000), a class action for damages stemming from an oil spill, the central question before the court was class certification. *Id.* at 650. ***In order to preserve a proposed class***, the *Slaven* court bifurcated the causation and damages aspects of the trial from liability because the court deemed the class membersô causation and damages claims to be not typical. *Id.* at 658. The present litigation, as a straightforward product liability case, does not pose any similar challenges to the Court and *Slaven* sheds no light on the issues here.

In the third case cited by Defendants, *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996), the Ninth Circuit reviewed an approximately $2 billion class action verdict against the estate of Ferdinand Marcos, former dictator of the Philippines. *Id.* at 772. The class consisted of ñall civilian citizens of the Philippines who, between 1972 and 1986, were tortured, summarily executed, or ódisappearedô by Philippine military or paramilitary groups; the class also included the survivors of deceased class members.ò *Id.* at 770. In large part because the compensatory damages phase of the proceedings required testimony taken in the Philippines before a special master, the Ninth Circuit Court of Appeals approved of the District Courtôs trifurcation of the trial, and noted that the District Courtôs method was ñnot unprecedented in class actions.ò *Id.* at 782.

This matter is not a class action and in any event obviously lacks the complexity or scale of *Hilao* or even *Slaven*. Thus, two of the cases cited by Defendants are totally inapposite to their Motion, and one of the cases, *Calmar*, supports Plaintiff Cortezôs position.

**D. <u>The Issues in this Matter Are Not Separable and Bifurcation Presents a Risk of Confusion.</u>**

In this case, the issues of Defendantsô liability and Mr. Cortezôs injuries are so intertwined that effective bifurcation is not possible. In addition to Rule 42(b)ôs requirement that the Court

consider the potential for convenience, prejudice, and judicial economy, courts have also held that on a motion for bifurcation, courts should consider the separability of issues. *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961). Indeed, the Ninth Circuit has ***reversed*** a district courtøs bifurcation of liability and damages in a personal injury matter, ***notwithstanding Rule 42(b)***, stating that ñthe issues of liability and damages, exemplary or normal, are not so distinct and separable that a separate trial of the damage issues may be had without injustice. The question of damages is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty which would amount to a denial of a fair trial.ö *Id.* Likewise, the Ninth Circuit ***reversed*** a district courtøs bifurcation where the Ninth Circuit determined bifurcation could potentially ñbar effective review or produce findings that are illogical or circular.ö *Symbolic Control, Inc. v. International Business Machines Corp.*, 643 F.2d 1339, 1342 (9th Cir. 1980).

The liability and damages issues in this case are clearly not readily separable. For example, the nature and extent of Mr. Cortezøs injuries tends to prove that Defendantsô defective product, rather than another factor, was the substantial factor to blame for his crushed leg. At the same time, details about how the injury occurred go to damages. In a trial bifurcated according to Defendantsô wishes, Mr. Cortez would be in the absurd position of attempting to prove Defendants are liable for *something*ð while being disallowed from articulating the nature of his injuries or even the immediate aftermath of the incident for fear of mentioning his damages. The inevitable result would be confusion that could potentially ñbar effective review or produce findings that are illogical or circular.ö *Symbolic Control*, 643 F.2d at 1342 (reversing district courtøs decision to bifurcate a trial).

**E. <u>Bifurcation Does Not Serve Convenience.</u>**

This case is a straight-forward personal injury matter, and bifurcation would multiply rather than reduce the inconveniences posed by this litigation for parties and witnesses because damages and liability cannot be readily separated. Medical evidence may go to demonstrate how the accident occurred, for example. By the same token, how the injuries occurred will impact damages. Moreover, this case is not so complex as to warrant bifurcation. Up until now,

witnesses and parties properly anticipated a full trial on the merits. Deviating from standard procedure and rendering some subject matter verboten in testimony will confuse witnesses and the jury, and lead to unnecessary motion practice. Bifurcation also creates the potential that some witnesses will have to testify multiple times, even having to give the same or similar testimony more than once.

**F. <u>Bifurcation Does Not Serve Judicial Economy.</u>**

The Court itself would be ill-served by a bifurcation of this trial. Bifurcation poses a risk of duplicative testimony or needless multiple trips to court by the same witnesses. It also creates the potential for greater need to police testimony for forbidden topics, a more complex *voir dire* process, and an even greater volume of pleadings such as motions *in limine*.

Bifurcation thus creates a significant risk of wasting judicial resources. In one of the three cases cited by Defendants, *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861 (C.D. Cal. 1994), the court actually ***denied*** the defendantsô motion to bifurcate and to stay certain discovery, concluding that the sought order ñwould only complicate the instant proceedings and cause needless delay.ò *Id.* at 866.

Bifurcation can compound rather than reduce contention over evidence. For example, the Sixth Circuit reversed a district courtôs bifurcation of a trial because the bifurcation led to exclusion of important evidence: ñWhen the district court limited evidence of the severity of [plaintiff]ôs injury to evidence collected immediately after the incident, it ignored the fact that the severity of an injury may not be apparent immediately after an accident.ò *Martin v. Heideman*, 106 F. 3d 1308, 1312 (6th Cir. 1997).

**G. <u>Bifurcation Would Result in Prejudice to Plaintiff.</u>**

Bifurcation presents a clear and present danger of severe prejudice to Mr. Cortez for at least two important reasons. First, bifurcation creates the risk that the jury empanelled for the liability trial, unaware of the seriousness of Mr. Cortezôs injuries and their devastating impact on his life and on his family, will pre-judge his lawsuit as unnecessary or greedy. Such a bifurcated trial runs the risk of becoming less about the merits of the lawsuit as a whole than about other, irrelevant factors.

Second, Mr. Cortez and his counsel have been at work on this lawsuit for more than a year. In order to ensure that Mr. Cortez and his counsel will be ready for trial, a tremendous amount of work has already been put not only into discovery and other aspects of litigation, but into trial preparation and strategy. Bifurcation would render much of that work useless by necessitating a radically different approach to trial, from documentary evidence to witness testimony to overall presentation. Mr. Cortez and his counsel would be forced to go back to the drawing board because of a drastic procedural change that was neither sought by Mr. Cortez nor adequately justified by Defendants.

As Rule 42(b) makes explicit, one of the goals of bifurcation is to ***avoid*** prejudice to the parties, not create it. Fed. R. Civ. P. 42(b). In this matter, Defendantsô failure to even address prejudice is yet another reason Defendantsô Motion is thoroughly unjustified and should be denied.

**VI. <u>CONCLUSION.</u>**

Based on the foregoing, Defendantsô Motion to Bifurcate Liability and Damages Portions of Trial should be denied.

DATE: October 29, 2010

Respectfully submitted,

ANDRUS ANDERSON LLP

___*/s/ Jennie Lee Anderson*_____

Jennie Lee Anderson (SBN 203586)
Lori E. Anderson (SBN 205816)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2010, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Courtôs Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 29, 2010

*/s/ Jennie Lee Anderson*
Jennie Lee Anderson

ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com